UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| NAYANA AMBARISH PAREKH, Plaintiff | CIVIL ACTION |
|---|---|
| VERSUS | NO. 16-13731 c/w 16-14729 |
| ARGONAUTICA SHIPPING INVESTMENTS B.V. et al Defendants | SECTION: "E" (3) |

*Applies to: 16-13731*

## ORDER AND REASONS

Before the Court is a motion for summary judgment by Defendant Absolute Outdoor, Inc. ("Absolute").[1] The motion is unopposed. For the following reasons, the motion is **GRANTED**.

## BACKGROUND

On July 17, 2016, Captain Ambarish Ramnikari Parekh, a marine cargo surveyor employed by Maritech Commercial, Inc., fell into the Mississippi River as he was attempting to board the M/V AFRICAN RAPTOR from the C/B MISS RACHEL.[2] At the time of his fall, Captain Parekh was wearing an Onyx A/M 24 Type V personal flotation device ("PFD") manufactured by Absolute.[3]

Type V personal flotation devices will inflate automatically or manually when the wearer is immersed in water. To properly function, however, the PFD must be armed with a CO2 cartridge.[4] If the PFD is not properly armed with a $CO_2$ cartridge, it will not inflate

---

[1] R. Doc. 40.
[2] R. Doc. 40-15 at 8. The M/V AFRICAN RAPTOR was a 656.10-foot Bahamian flagged bulk cargo vessel. R. Doc. 6. at 2. The C/B MISS RACHEL, a 42-foot crew boat, was owned and controlled by Defendant Weber Marine, LLC. *Id.*
[3] R. Doc. 40-15 at 2.
[4] R. Doc. 40-9 at 2.

1

automatically when immersed in water or when the wearer pulls the manual "Jerk to Inflate" tab.[5] The PFD worn by Captain Parekh, purchased by his son Sandeep Parekh at Sports Authority in 2011, was packaged with a $CO_2$ cartridge, but sold unarmed.[6] Onyx PFDs are sold with warnings and instructions regarding the need to arm the PFD with the provided $CO_2$ cartridge prior to use.[7]

Captain Parekh's body was recovered in the Mississippi River on July 19, 2016, wearing the uninflated vest.[8] According to the deposition testimony of Sergeant Glenn Luna, the PFD had not been inflated, and no $CO_2$ cartridge was found in the PFD's inflator.[9] When Captain Parekh's PFD was later armed with a $CO_2$ cartridge and tested by Wayne Walters, Vice President of Kent Sporting Goods, Inc., in the presence of all counsel, the PFD operated as designed.[10] No other defects were discovered.[11]

On August 9, 2016, the Plaintiff filed this civil action and also an action *in rem* against the M/V AFRICAN RAPTOR.[12] The Plaintiff pleaded negligence against the M/V AFRICAN RAPTOR and strict products liability against Absolute as the manufacturer of the allegedly defective life vest based upon the general maritime law of the United States."[13]

On November 4, 2016, Absolute filed its answer to the Plaintiff's complaint, in which it included a jury demand and affirmative defenses relating to the Louisiana

---

[5] Id.
[6] R. Doc. 40-16 at 2.
[7] R. Doc. 40-9 at 4.
[8] R. Doc. 40-15 at 2.
[9] *Id*. at 3.
[10] R. Doc. 40-9 at 2.
[11] *Id*.
[12] R. Doc. 1. The Plaintiff filed an amended complaint on September 1, 2016. R. Doc. 6. The Court consolidated the Plaintiff's civil action for damages—No.16-13731—with her *in rem* action—No. 16-14729. R. Doc. 16.
[13] R. Doc. 6 at 5–6.

Products Liability Act ("LPLA").[14] The Louisiana Workers Compensation Corporation filed a motion to intervene on December 12, 2016,[15] which the Court granted.[16] On August 11, the Court ruled that Plaintiff's claims sounded solely in maritime law, and as a result struck Absolute's jury demand and affirmative defenses under the LPLA.[17]

On October 17, 2017, Absolute moved for summary judgment on the grounds that there exists no dispute of material fact, and that Absolute is entitled to judgment as a matter of law.[18] Absolute argues that Plaintiff has failed to make out a maritime products liability claim against it, and that Plaintiff's claim against Absolute should thus be dismissed.[19] The motion is unopposed.

## **LEGAL STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] "An issue is material if its resolution could affect the outcome of the action."[21] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[22] All reasonable inferences are drawn in favor of the nonmoving party.[23] There is no genuine issue of material fact if, even viewing the evidence in the light most

---

[14] R. Doc. 11.
[15] R. Doc. 17.
[16] R. Doc. 19.
[17] R. Doc. 34.
[18] R. Doc. 40.
[19] R. Doc. 40-1 at 1.
[20] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[21] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[22] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[23] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

3

favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[24]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[25] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[26]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[27] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled

---

[24] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[25] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[26] *Celotex*, 477 U.S. at 322–24.
[27] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

to summary judgment as a matter of law.[28] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[29] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[30] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[31] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[32]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim.

---

[28] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[29] *Celotex*, 477 U.S. at 332–33.
[30] *Id.*
[31] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[32] *Id.*; *see also First National Bank of Arizona*, 391 U.S at 289.

'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[33]

## **LAW AND ANALYSIS**

The Fifth Circuit applies the Restatement (Second) of Torts to maritime product liability cases.[34] To make out a maritime product liability claim, a plaintiff must show that the product was defective and unreasonably dangerous for its normal use.[35] "The determination that a product is unreasonably dangerous . . . means that, on balance, the utility of the product does not outweigh the magnitude of the danger . . . In other words, it must be so dangerous that a reasonable man would not sell the product if he knew the risk involved."[36]

The undisputed facts show that the Onyx A/M Type V Inflatable PFD worn by Captain Parekh during the accident was not defective. The PFD was sold with the necessary $CO_2$ cartridge,[37] and Captain Parekh's son testified that he and a deckhand armed the PFD with the cartridge after it was purchased.[38] When Captain Parekh's PFD was found, however, no $CO_2$ cartridge was installed.[39] During the May 17, 2017 examination of Captain Parekh's PFD, the PFD operated normally when armed with a $CO_2$ cartridge, and no other defect or damage was otherwise discovered.[40]

Plaintiff does not provide any evidence creating a dispute of material fact as to whether the Onyx PFD manufactured by Absolute and worn by Captain Parekh at the time

---

[33] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[34] *Vickers v. Chiles Drilling Co.*, 822 F.3d 535 (5th Cir. 1987).
[35] *Id.* (citing the Restatement (Second) of Torts § 402A).
[36] *Pavlides v. Galveston Yacht Basin, Inc.*, 727 F.2d 330 (5th Cir. 1984).
[37] R. Doc. 40-16 at 3.
[38] *Id.* at 4.
[39] R. Doc. 40-15 at 3.
[40] R. Doc. 40-9 at 2.

6

of his death is defective in any way. Accordingly, Plaintiff is unable to assert a maritime product liability claim against Absolute.

## **CONCLUSION**

**IT IS ORDERED** that Defendant Absolute Outdoor, Inc.'s motion for summary judgment is **GRANTED.**

**New Orleans, Louisiana, this 22nd day of November, 2017.**

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**