UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| NAYANA AMBARISH PAREKH, Plaintiff | CIVIL ACTION |
|---|---|
| VERSUS | NO. 16-13731 c/w 16-14729 |
| ARGONAUTICA SHIPPING INVESTMENTS B.V. et al Defendants | SECTION: "E" (3) |

*Applies to: 16-13731*

## ORDER AND REASONS

Before the Court is a motion for partial summary judgment by Plaintiff Nayana Ambarish Parekh.[1] Plaintiff seeks the dismissal of Defendant Weber Marine, L.L.C.'s defense of limitation of liability under 47 U.S.C. § 30501 *et seq*. The motion is opposed.[2] Plaintiff filed a reply to Defendant Weber Marine, L.L.C.'s response in opposition.[3] For the following reasons, the motion is **DENIED**.

## BACKGROUND

The complaint alleges that on July 17, 2016, Captain Ambarish Ramnikari Parekh, a marine cargo surveyor employed by Maritech Commercial, Inc., was scheduled to board the M/V AFRICAN RAPTOR to perform port captaincy survey services while the vessel was moored in the Mississippi River.[4] While attempting to board the M/V AFRICAN RAPTOR from the M/V MISS RACHEL, Captain Parekh fell into the river.[5] Captain

---

[1] R. Doc. 69.
[2] R. Doc. 76.
[3] R. Doc. 104.
[4] R. Doc. 6 at ¶¶ 5-6.
[5] R. Doc. 6 at ¶ 7.

1

Parekh's body was recovered in the Mississippi River on July 19, 2016, wearing the uninflated personal flotation device ("PFD") he was wearing when he fell.[6]

The undisputed facts are as follows. The M/V MISS RACHEL is owned by Weber Marine, L.L.C. ("Weber").[7] Captain Roin Richard, a Weber employee, operated the M/V MISS RACHEL that day.[8] When the M/V MISS RACHEL arrived at the M/V AFRICAN RAPTOR, Captain Richard positioned the M/V MISS RACHEL with her starboard side adjacent to an accommodation ladder on the M/V AFRICAN RAPTOR's port side.[9] Thereafter, Shymetris Allen, an employee of the United States Department of Agriculture who had just completed her inspection duties aboard the M/V AFRICAN RAPTOR, descended the accommodation ladder and boarded the M/V MISS RACHEL.[10] Captain Parekh then stepped onto the accommodation ladder platform.[11] When he stepped off the M/V MISS RACHEL, he lost his balance and fell into the Mississippi River.[12]

After Captain Parekh fell into the water, Ms. Allen immediately yelled to Captain Richard, "[h]e's in the river."[13] Ms. Allen ran to grab the life ring stowed on the deck rail of the M/V MISS RACHEL.[14] At the same time, Captain Richard reported the man overboard alert on his vessel radio, and then left the wheelhouse to assist in the rescue effort.[15] Captain Richard grabbed the hook pole stowed on the stern handrail and handed it to Ms. Allen.[16] Unfortunately, Ms. Allen was unable to get close enough to reach Captain

---

[6] R. Doc. 6 at ¶ 10.
[7] R. Doc. 69-27 at ¶ 1. R. Doc. 76-2 at ¶ 1.
[8] R. Doc. 69-27 at ¶ 17. R. Doc. 76-2 at ¶ 17.
[9] R. Doc. 69-27 at ¶ 25. R. Doc. 76-2 at ¶ 25.
[10] R. Doc. 69-27 at ¶ 27. R. Doc. 76-2 at ¶ 27.
[11] R. Doc. 69-27 at ¶ 30. R. Doc. 76-2 at ¶ 30.
[12] R. Doc. 69-27 at ¶ 30. R. Doc. 76-2 at ¶ 30.
[13] R. Doc. 69-27 at ¶ 31. R. Doc. 76-2 at ¶ 31.
[14] R. Doc. 69-27 at ¶ 34. R. Doc. 76-2 at ¶ 34.
[15] R. Doc. 69-27 at ¶ 38. R. Doc. 76-2 at ¶ 38.
[16] R. Doc. 69-27 at ¶ 39. R. Doc. 76-2 at ¶ 38.

Parekh with the hook pole, and the river current carried him downstream.[17] Captain Parekh's body was recovered on July 18, 2017.[18]

On August 9, 2016, the Plaintiff, Nayana Ambarish Parekh, the wife of Captain Parekh, filed this civil action, and also an *in rem* action against the M/V AFRICAN RAPTOR.[19] She raises negligence claims against Weber, African Raptor Shipping Company, Ltd., and Absolute Outdoor, Inc., the manufacturer of the PFD worn by Captain Parekh when he fell into the Mississippi River.[20] With regard to Defendant Weber, Plaintiff alleges Weber was negligent in operating the M/V MISS RACHEL "with a crew of one which prevented her crew from participating in a rescue at sea effort, failure to equip the vessel with required sea rescue equipment and failure to provide [Captain Parekh] with a safe means of egress from the crew boat."[21]

Weber filed its answer to Plaintiff's amended complaint on November 4, 2016.[22] As relevant to this motion, Weber asserted a defense under the Limitation of Liability Act, 46 U.S.C. § 30505 *et seq*, claiming it is entitled to have its liability limited to the amount or value of its interest in the vessel and her pending freight as of the date of the alleged accident in question.[23]

On November 28, 2017, Plaintiff moved for partial summary judgment.[24] Plaintiff argues the uncontested facts show that Weber's negligence resulted in the death of

---

[17] R. Doc. 69-27 at ¶¶ 42-43. R. Doc. 76-2 at ¶¶ 42-43.
[18] R. Doc. 69-27 at ¶ 49. R. Doc. 76-2 at ¶ 49.
[19] R. Doc. 1. The Plaintiff filed an amended complaint on September 1, 2016. R. Doc. 6. The Court consolidated the Plaintiff's civil action for damages—No.16-13731—with her *in rem* action—No. 16-14729.
[20] On November 22, 2017, the Court granted Absolute Outdoor, Inc.'s motion for summary judgment. R. Doc. 63. The Plaintiff and Defendant African Raptor Shipping Company, Ltd. agreed to a compromise in the matter, and the Court issued a 60-day order of dismissal on December 27, 2017. R. Doc. 105.
[21] R. Doc. 6 at 4.
[22] R. Doc. 14.
[23] *Id.* at 5.
[24] R. Doc. 69.

Captain Parekh, and as a result she is entitled to summary judgment that Weber is not entitled to a limitation of liability defense.

## **LEGAL STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[25] "An issue is material if its resolution could affect the outcome of the action."[26] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[27] All reasonable inferences are drawn in favor of the nonmoving party.[28] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[29]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[30] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the

---

[25] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[26] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[27] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[28] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[29] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[30] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[31]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[32] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[33] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[34] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[35] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must

---

[31] *Celotex*, 477 U.S. at 322–24.
[32] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[33] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980);
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[34] *Celotex*, 477 U.S. at 332–33.
[35] *Id.*

either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[36] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[37]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[38]

## **LAW AND ANALYSIS**

Under the Limitation of Liability Act, a shipowner may limit its liability for maritime casualties to "the value of the vessel and pending freight."[39] "However, if the vessel's negligence or unseaworthiness is the proximate cause of the claimant's loss, the plaintiff-in-limitation must prove it had no privity or knowledge of the unseaworthy conditions or negligent acts."[40] The determination of whether a shipowner is entitled to protection under the Limitation of Liability Act is a two-step process. "First, the court must determine what acts of negligence or conditions of unseaworthiness caused the

---

[36] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[37] *Id.*; *see also First National Bank of Arizona*, 391 U.S at 289.
[38] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[39] 46 U.S.C. §30505(a).
[40] *In re Omega Protein, Inc.*, 548 F.3d 361, 371 (5th Cir. 2008).

accident. Second, the court must determine whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness."[41] Once the claimant satisfies the initial burden of proving negligence or unseaworthiness, the burden of proof shifts to the shipowner to prove the lack of privity or knowledge.[42]

To state a cause of action for negligence under the General Maritime Law, a "plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by plaintiff, and a causal connection between defendant's conduct and the plaintiff's injury."[43] "[A] party's negligence is actionable only if it is the 'legal cause' of the plaintiff's injuries," which "is something more than 'but for' causation, and the negligence must be a 'substantial factor' in the injury." [44] Moreover, "where there are concurrent causes of an accident, the proper inquiry is whether the conduct in question was a substantial factor in bringing about the accident."[45] "Whether the defendant's breach of a duty was a substantial factor in bringing about the plaintiff's injury is a question of fact."[46] In short, to prove Weber's negligence, Plaintiff must demonstrate that there was a duty owed by Weber to Captain Parekh, breach of that duty, injury sustained by Captain Parekh, and a causal connection between Weber's conduct and Captain Parekh's injury.[47]

---

[41] *Farrell Lines Inc. v. Jones*, 530 F.2d 7, 10 (5th Cir. 1976). *See also In re Omega Protein, Inc.*, 548 F.3d 361, 371 (5th Cir. 2008); *In re OMI Envtl. Solutions*, 2014 WL 2158492, at *2 (E.D. La. May 23, 2014).
[42] *See In re South Coast Boat Rentals, Inc.*, 1999 WL 615180 (E.D. La. Aug. 12, 1999).
[43] *In re Cooper/T.Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991). *See also Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000); *In re Nassau Bay Water Sports, Inc.*, 62 F.3d 397 (5th Cir. 1995) (per curiam).
[44] *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992) (quoting *Chavez v. Noble Drilling Corp.*, 567 F.2d 287, 289 (5th Cir. 1978); *Thomas v. Express Boat Co., Inc.*, 759 F.2d 444, 448 (5th Cir. 1985)).
[45] *See, e.g., In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, 2011 WL 1792542, at * 20 (E.D. La. Jan. 20, 2011) (citing *Hennegan v. Cooper/T. Smith Stevedoring Co., Inc.*, 02-0282, pp. 6–7 (La. App. 4 Cir. 12/30/02), 837 So. 2d 96, 102).
[46] *Hennegen*, 837 So. 2d at 102 (citing *Haynes v. Calcasieu Medical Transp., Inc.*, 97-300, p. 6 (La. App. 3 Cir. 10/29/97), 702 So. 2d 1024, 1028).
[47] *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991).

Plaintiff argues she is entitled to judgment as a matter of law on Weber's limitation of liability defense because the undisputed facts show Weber was negligent. Rule 56 states, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[48] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[49] All reasonable inferences are drawn in favor of the non-moving party.[50]

"The use of summary judgment is rarely appropriate in negligence . . . cases, even where the material facts are not disputed."[51] As the Fifth Circuit has explained:

> Because of the peculiarly elusive nature of the term "negligence" and the necessity that the trier of facts pass upon the reasonableness of the conduct in all the circumstances in determining whether it constitutes negligence, it is the rare personal injury case which can be disposed of by summary judgment, even where the historical facts are concededly undisputed.[52]

Thus, a court will grant summary judgment in a negligence case only in "rare circumstances."[53] Further, "[s]ummary judgment is rarely granted in maritime negligence

---

[48] FED. R. CIV. P. 56(a).
[49] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir.2008); *see also Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 150–51 (2000).
[50] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994).
[51] *Davidson v. Stanadyne, Inc.*, 718 F.2d 1334, 1338–39 (5th Cir. 1983) (citing *Marsden v. Patane*, 380 F.2d 489, 491 (5th Cir. 1967); *Gross v. Southern Railway Co.*, 414 F.2d 292, 296 (5th Cir.1969); *Croley v. Matson Navigation Co.*, 434 F.2d 73, 75 (5th Cir.1970); *King v. Avtech Aviation, Inc.*, 655 F.2d 77, 78 (5th Cir. 1981); 10A Wright, Miller & Kane, Federal Practice and Procedure § 2729 at 195 (1983)).
[52] *Gauk v. Meleski*, 346 F.2d 433, 437 (5th Cir. 1965).
[53] *Davidson*, 718 F.2d at 1339 & n.8 ("In tort actions in which determinations of a less "elusive nature," such as the existence of an agency relationship, waiver, or whether a plaintiff is in a class protected by a statute, are dispositive, summary judgment may more often be appropriate." (citing 10A Wright, § 2729 at 197–201)); *see also Keating v. Jones Development of Mo., Inc.*, 398 F.2d 1011, 1015 (5th Cir. 1968) ("Negligence is a seldom enclave for trial judge finality. Negligence is a composite of the experiences of the average man and is thus usually confined to jury evaluation.").

cases because the issue of whether a defendant acted reasonably is ordinarily a question for the trier of fact."[54]

Plaintiff asserts the undisputed facts prove Weber was negligent. Weber, as the owner of the vessel, owed Captain Parekh a duty of exercising reasonable care under the circumstances of the voyage.[55] According to the Plaintiff, Weber breached that duty by (1) operating the vessel with the life ring in an unusable state, and (2) failing to properly inspect the life ring on the morning of the incident.[56]

With respect to the unusable state of the life ring, Ms. Allen testified that she tried to remove the life ring from the deck rail of the M/V MISS RACHEL, but was unable to do so because "the string attached was tangled and wrapped around the life ring multiple times."[57] Regarding the failure to inspect, Plaintiff cites deposition testimony by Weber employee Captain Ducote Kiernan in which he admits he does not have a "specific recollection" of checking the life ring on the morning of July 17, 2016,[58] as well as Weber supervisor Rodney Trahan's testimony that he did not conduct a visual inspection of the M/V MISS RACHEL on the morning in question.[59] Plaintiff also relies on the testimony of Captain Roin Richard in which he states that he did not touch the life ring on that day.[60]

In response, Defendant Weber provides evidence to establish genuine disputes of material fact with respect to whether the life ring rope was tangled and whether the life

---

[54] *Schoenfeldt v. Schoenfeldt*, No. 13-5468, 2014 WL 1910808, at *3 (W.D. Wash. May 13, 2014) (citing *Christensen v. Georgia–Pacific Corp.*, 279 F.3d 807, 813 (9th Cir. 2002)); *see also id* ("Questions of forseeability and causation" in Jones Act negligence cases "particularly lend themselves to resolution by a jury" (citing *Wyler v. Holland America Line–USA, Inc.*, 348 F. Supp. 2d 1206, 1210 (W.D. Wash. 2003))).
[55] *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959).
[56] R. Doc. 69-27 at 2-3.
[57] R. Doc. 69-10 at 51 (Deposition of Shymetris Allen).
[58] R. Doc. 69-8 at 21-22 (Deposition of Ducote Kiernan).
[59] R. Doc. 69-6 at 5-6 (Deposition of Rodney Trahan).
[60] R. Doc. 69-9 at 79. Although Plaintiff asserts that Captain Richard's testimony evinces that "he did not inspect the life ring on the MISS RACHEL prior to the voyage on July 17, 2016," R. Doc. 69-27 at ¶ 18, his testimony, read in context, only indicates that he did not touch the life ring that morning.

ring was inspected. Captain Ducote Kiernan testified that he inspects the life ring aboard the M/V MISS RACHEL each day, "first thing in the morning," to determine whether the life ring is "where it's supposed to be or all tangled up."[61] Captain Kiernan further testified that, although he does not have a specific recollection of touching the life ring on the morning of July 17, 2016, he is "a creature of habit," and performs this checklist inspection "every day."[62] According to the report of Weber's expert, retired Coast Guard Commander Tom Green, "[t]here is no evidence that the life ring was fouled prior to her attempt to free it for deployment to Mr. Parekh."[63] Captain Richard also testified he did not know why Ms. Allen could not simply lift and throw the life ring.[64]

With respect to the causal connection between Weber's alleged breach and Captain Parekh's death, Plaintiff relies on the deposition testimony of Ms. Allen, in which Ms. Allen speculated that, if she had been able to pull the life ring off of the rack, she could have tossed Captain Parekh the life ring.[65] Plaintiff asserts Weber's negligence "substantially contributed to [Captain Parekh's] drowning."[66] In opposition, Weber provides testimony that Captain Parekh's death may not have been caused by the allegedly tangled life ring. According to Ms. Allen, Captain Parekh's uninflated life vest was slipping off of his body while she was trying to reach him with the hook pole, and Captain Parekh was struggling to keep his head above water.[67] Weber's expert, Tom Green, opined that in such circumstances, a life ring "would more likely than not be ineffective" in saving someone from sinking, because a "life ring [] is only useful if the person can grab it and

---

[61] R. Doc. 76-9 at 8.
[62] R. Doc. 69-8 at 22.
[63] R. Doc. 76-8 at 7 (Expert Report of Tom Green).
[64] R. Doc. 76-5 at 20.
[65] R. Doc. 69-27 at 6.
[66] R. Doc. 69-1 at 15.
[67] R. Doc. 76-6 at 16.

pull himself up, aside from marking his position for rescue."[68] Mr. Green also opined that Ms. Allen's difficulty in deploying the life ring "can be attributed to her excited state during this exigent situation," rather than a tangled or knotted line.[69]

Further, Defendant asserts that factors external to Weber played a more substantial role in Captain Parekh's death. According to the deposition testimony of Sergeant Glenn Luna cited in a separate unopposed motion for summary judgment, Captain Parekh's PFD had not been inflated, and no $CO_2$ cartridge was found in the PFD's inflator.[70] Wayne Walters, CEO of the manufacturer of Captain Parekh's PFD, testified that a properly armed PFD of the type worn by Captain Parekh, if properly maintained, could have kept him afloat in the Mississippi River.[71] The Court is unable to determine whether or not Captain Parekh was contributorily negligent in failing to maintain his PFD based on the evidence provided by the parties. The comparative negligence of Weber and Captain Parekh will be decided by the jury after hearing the facts fully developed at trial.[72] Consequently, even assuming Weber breached its duty to Captain Parekh in its operation of the M/V MISS RACHEL, Weber has provided evidence that creates disputes of material fact with respect to the causation prong of the negligence analysis.

As the Fifth Circuit has stated, "it is the rare personal injury case which can be disposed of by summary judgment, even where the historical facts are concededly undisputed."[73] The Court "should only decide the issue of causation on summary judgment if the allegation is so frivolous and obviously impossible so as to fall short of

---

[68] R. Doc. 76-8 at 7.
[69] *Id.*
[70] R. Doc. 40-15 at 2.
[71] R. Doc. 76-2 at 8-9 (Deposition of Wayne Walters, CEO of Absolute Outdoor, Inc.).
[72] *See In re OMI*, 2014 WL 2158492 at *3.
[73] *Gauk v. Meleski*, 346 F.2d 433, 437 (5th Cir. 1965).

presenting a genuine issue of material fact."[74] Factual disputes concerning whether Weber breached its duty to Captain Parekh, and whether this breach caused Captain Parekh's death, preclude summary judgment.[75]

Because there are material facts in dispute with respect to the negligence prong of the analysis, the Court need not address Weber's lack of privity or knowledge.[76] Plaintiff is not entitled to summary judgment on the limitation of liability defense asserted by Weber Marine, L.L.C.

## **CONCLUSION**

**IT IS ORDERED** that Plaintiff Nayana Ambarish Parekh's motion for summary judgment is **DENIED.**

New Orleans, Louisiana, this 4th day of January, 2018.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[74] *Tidewater Marine, Inc. v. Sanco Intern., Inc.*, No. Civ.A. 96-1258, 1997 WL 543108, at *5 (E.D. La. Sept. 3, 1997) (quoting *Del Valle v. Marine Transp. Lines, Inc.*, 582 F. Supp. 573, 578 (D.P.R. 1984), and citing *Bommarito v. Penrod Drilling Corp.*, 929 F.2d 186, 188 (5th Cir. 1991) (explaining that a court should take the question of causation away from a jury only in the "complete absence of facts to support" liability)).
[75] *See In re OMI Envtl. Solutions*, 2014 WL 2158492 at *3 (E.D. La. May 23, 2014).
[76] *See In re Weber Marine Inc.*, 2010 WL 4884436 at *4 (E.D. La. Nov. 23, 2010).