UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NAYANA AMBARISH PAREKH,<br>  Plaintiff | CIVIL ACTION |
| VERSUS | NO. 16-13731<br>c/w 16-14729 |
| ARGONAUTICA SHIPPING<br>INVESTMENTS B.V., ET AL.,<br>  Defendants | SECTION: "E" (3) |

*Applies to: 16-13731*

## ORDER AND REASONS

Before the Court are two motions for partial summary judgment by Defendant Weber Marine, L.L.C.[1] The first motion involves Plaintiff Nayana Ambarish Parekh's claim for loss of support in her general maritime wrongful death action and the computation of Decedent Captain Ambarish Parekh's work-life expectancy.[2] The second motion involves Plaintiff's claim for damages for loss of society on behalf of Captain Parekh's adult children and minor grandchildren.[3] The motions are opposed.[4] Defendant Weber Marine, L.L.C. filed replies to Plaintiff's oppositions.[5] For the reasons that follow, the motions are **GRANTED**.

## BACKGROUND

The complaint alleges that on July 17, 2016, Captain Ambarish Ramnikari Parekh, a marine cargo surveyor employed by Maritech Commercial, Inc., was scheduled to board

---

[1] R. Docs. 66 and 67.
[2] R. Doc. 66.
[3] R. Doc. 67.
[4] R. Doc. 71 and 75.
[5] R. Doc. 92 and 94.

1

the M/V AFRICAN RAPTOR to perform port captaincy survey services while the vessel was moored in the Mississippi River.[6] While attempting to board the M/V AFRICAN RAPTOR from the M/V MISS RACHEL, Captain Parekh fell into the river.[7] Captain Parekh's body was recovered in the Mississippi River on July 19, 2016, wearing the uninflated personal flotation device he was wearing when he fell.[8]

Nayana Ambarish Parekh, Captain Parekh's spouse, filed a complaint in this Court on August 9, 2016, individually and as personal representative of Captain Parekh.[9] In addition to causes of action for negligence and strict product liability,[10] Plaintiff pursues a wrongful death action under general maritime law.[11] Plaintiff alleges she "has suffered loss of consortium, society, and financial support, for which [she] is entitled to damages[.]"[12] During discovery, Plaintiff clarified that she seeks damages for herself and on behalf of all Captain Parekh's beneficiaries, including their adult children Siddharth Parekh and Sandeep Parekh, and their grandchildren Rajveer, Moksh, Tara, and Trisha.[13]

Defendant Weber filed these motions for partial summary judgment on November 28, 2017.[14] In the first motion,[15] Weber seeks a ruling limiting the Plaintiff's lost-wages recovery to "an amount commensurate with the Bureau of Labor Statistics-published work-life expectancy."[16] Weber argues the "proper measure of time for assessing lost future wages is the statistical average for one's work-life expectancy," which, based on the

---

[6] R. Doc. 6 at ¶¶ 5-6.
[7] R. Doc. 6 at ¶ 7.
[8] R. Doc. 6 at ¶ 10.
[9] R. Doc. 1. Plaintiff filed an amended complaint on September 1, 2016. R. Doc. 6.
[10] The Court dismissed Plaintiff's product liability claim on November 22, 2017. R. Doc. 63.
[11] R. Doc. 6 at 6.
[12] *Id.*
[13] *See* R. Doc. 75 at 2 (stating that the list of beneficiaries was produced in response to Defendant Weber Marine, L.L.C.'s interrogatories).
[14] R. Doc. 66, 67.
[15] R. Doc. 66.
[16] R. Doc. 66-2 at 1.

calculations of Weber's expert witness, would be an additional 1.72 to 6.8 years beyond Captain Parekh's 67th birthday.[17] In response, Plaintiff asserts Captain Parekh would have continued to work until his natural death, and so Plaintiff is entitled to recover lost wages consistent with his estimated life expectancy of 84.13 years.[18]

In the second motion,[19] Weber seeks a judgment that only Ms. Parekh, as Captain Parekh's widow, may recover damages for loss of society.[20] Weber contends damages for loss of society under general maritime law are available only to the dependent relatives of maritime employees. Accordingly, Weber asserts that Siddharth, Sandeep, Rajveer, Moksh, Tara, and Trisha, to the extent they are non-dependent relatives of Captain Parekh, are not entitled to loss-of-society damages.[21]

## **LEGAL STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[22] "An issue is material if its resolution could affect the outcome of the action."[23] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[24] All reasonable inferences are drawn in favor of the nonmoving party.[25] There is no genuine issue of material fact if, even viewing the evidence in the light most

---

[17] R. Doc. 66-6 at 2-5.
[18] R. Doc. 71-1.
[19] R. Doc. 67.
[20] *Id.* at 6.
[21] *Id.* at 3-5.
[22] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[23] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[24] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[25] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[26]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[27] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[28]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[29] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled

---

[26] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[27] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[28] *Celotex*, 477 U.S. at 322–24.
[29] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

to summary judgment as a matter of law.[30] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[31] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[32] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[33] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[34]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim.

---

[30] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[31] *Celotex*, 477 U.S. at 332–33.
[32] *Id.*
[33] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[34] *Id.*; *see also First National Bank of Arizona*, 391 U.S at 289.

'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[35]

## LAW AND ANALYSIS

### I. Loss of Support

Plaintiff asserts a wrongful death claim under general maritime law.[36] In addition to damages for loss of consortium and society, she seeks recovery for the loss of financial support provided by Captain Parekh.[37] In calculating these damages, Plaintiff argues that Captain Parekh intended to work until he died, and as a result the loss-of-support damages should be based on his life expectancy. According to Plaintiff's expert, Dr. Robert F. Hebert, Captain Parekh's life expectancy was 84.13 years.[38]

A damages award for future lost wages is generally based upon the maritime employee's work-life expectancy—the "average number of years that a person of a certain age will both live and work."[39] Courts use work-life expectancy data to calculate future earnings unless there is evidence supporting a variation from the average.[40] This evidence must be more than mere conclusory assertions regarding the decedent's intentions to work late into life, however.[41] In *Barto v. Shore Const., L.L.C*, for example, the Fifth Circuit reversed a district court decision to allow an above-average work-life expectancy calculation based only on the plaintiff's testimony that he planned to work until he could

---

[35] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[36] R. Doc. 6.
[37] *See* R. Doc. 6 at 6.
[38] R. Doc. 71-1.
[39] *Barto v. Shore Const., L.L.C.*, 801 F.3d 465, 475 (5th Cir. 2015) (quoting *Madore v. Ingram Tank Ships, Inc.*, 732 F.2d 475, 478 (5th Cir. 1984).
[40] *Deperrodil v. Bozovic Marine, Inc.*, 842 F.3d 352, 361 (5th Cir. 2016).
[41] *Id.*

retire, "[w]hatever the retirement age is."[42] The Fifth Circuit stated that although a stated retirement goal may be relevant, "even if the district court believed [the plaintiff] wanted to work until age 67, wanting to work until age 67 is not the only or even the most significant factor in determining whether someone actually will work until age 67."[43] Looking to its holding in *Madore v. Ingram Tank Ships, Inc.*, the Fifth Circuit reiterated that, in order to claim loss-of-support damages beyond the average work-life expectancy, the plaintiff must provide "evidence that a particular person, by virtue of his health or occupation or other factors, is likely to live and work a longer, or shorter, period than the average."[44]

The Fifth Circuit subsequently clarified the nature of the evidence necessary to meet the *Madore* standard.[45] In *Deperrodil v. Bozovic Marine, Inc.*, the court affirmed the district court's determination that a higher-than-average work-life estimate was warranted, because the plaintiff "fully developed the evidentiary basis for such a departure."[46] The plaintiff had employed a vocational-rehabilitation expert and disclosed the medical history on which the expert based her opinion. In *Deperrodil*, as in *Barto*, the plaintiff had stated a retirement goal.[47] Unlike *Barto*, however, the goal was corroborated by an agreement between the plaintiff and his spouse, and a vocational counselor testified it was a reasonable goal, considering the plaintiff's medical history, work history, and future medical prognosis.[48]

---

[42] *Barto*, 801 F.3d at 475.
[43] *Id.*
[44] *Id.*
[45] *Deperrodil v. Bozovic Marine, Inc.*, 842 F.3d 352, 361 (5th Cir. 2016).
[46] *Id.* at 362.
[47] *Id.*
[48] *Id.*

In its motion for partial summary judgment, Weber asserts that Plaintiff has failed to identify evidence that will be introduced at trial sufficient to meet the *Madore* standard.[49] Weber presents undisputed facts that plaintiffs have not presented any expert testimony from a vocational counselor, expert in rehabilitation, or medical doctor who will testify that Captain Parekh was capable of continuing in his line of work for another seventeen years.[50]

In response, Plaintiff provided an affidavit supporting her claim that Captain Parekh could have worked longer than the statistical average for work-life expectancy. According to Plaintiff's affidavit, Captain Parekh "had no plans to retire and intended to work for the rest of his life."[51] Plaintiff also provided the deposition of Captain Parekh's employer, Chander Gorowara, who, when asked about how long Captain Parekh intended to work, testified, "Forever. Until the legs give out. We used to talk about this quite often. Here we have an office pool for the lottery. We used to say, one day, my fantasy is [that] we win the Mega Millions and all of us will retire. And he used to say, no, not me, you can hand over the keys to me and I will continue."[52] Gorowara further testified that Captain Parekh was physical fit for his age, and fully expected him to continue working indefinitely, stating, "Physically, he was fit. Mentally, he was strong, and to me, as a business owner, he was very dependable. Until he could not work, he would have worked.[53]

The Court finds, even weighing all evidence in favor of Plaintiff, that she has not created a genuine dispute of material fact regarding Captain Parekh's capability of

---

[49] R. Doc. 66-2 at 2.
[50] R. Doc. 66-3 at ¶¶ 6-7. R. Doc. 71-6 at ¶¶ 6-7.
[51] R. Doc. 71-2 at ¶ 14.
[52] R. Doc. 71-5 at 4.
[53] R. Doc. 71-5 at 5.

working longer than his statistical work-life average. Under *Madore*, Plaintiff must provide "evidence that a particular person, *by virtue of his health or occupation or other factors*, is likely to live and work a longer, or shorter, period than the average."[54] None of Plaintiff's evidence does so. First, Plaintiff's self-serving affidavit is not persuasive summary judgment evidence.[55] The Fifth Circuit rejects attempts to defeat summary judgment by the submission of self-serving affidavits and testimony.[56] Second, the deposition testimony of Mr. Gorowara, while it may corroborate Plaintiff's assertions of Captain Parekh's desire to work, fails to show how either Captain Parekh's medical condition or the nature of his employment makes it likely he would work longer than the average. For example, Mr. Gorowara does not explain how Captain Parekh could have continued as a marine surveyor—an obviously rigorous line of work—into his mid-80s. Similar to the plaintiff in *Barto*, Captain Parekh was employed in a highly dangerous, physically demanding field. As the Fifth Circuit stated, an employee in such a field "might have become disabled before [his intended retirement] as a result of illness or some other misadventure. . . . [Plaintiff] presented no evidence that such events were particularly unlikely given his health or other factors."[57] In this case, Plaintiff has likewise failed to provide evidence that "such events were particularly unlikely" to occur with respect to Captain Parekh.[58]

---

[54] *Madore v. Ingram Tank Ships, Inc.* 732 F.2d 475, 478 (1984).
[55] *See Guldin v. Conoco, Inc.*, 37 Fed. Appx. 712 (5th Cir. 2002) ("Guldin offers only his own self-serving and conclusory affidavit . . . [t]he district court correctly concluded that Guldin's affidavit was no bar to entry of summary judgment.").
[56] *See, e.g.*, *BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996); *Cenac Marine Services, LLC v. Clark*, 2017 WL 1511760 (E.D. La. Apr. 7, 2017).
[57] *Barto v. Shore Const., LLC*, 801 F.3d 465, 475 (5th Cir. 2015).
[58] *Id.*

Further, while Mr. Gorowara, as Captain Parekh's employer, may have an understanding of Captain Parekh's work habits and employment history, he is not a vocational or medical professional. Therefore, he is unable to give expert testimony as to Captain Parekh's medical condition and physical fitness for continued service in an extremely hazardous profession. Without expert testimony, medical records, or other valid summary judgment evidence to describe the state of Captain Parekh's health and the nature of his duties, Plaintiff's submissions do not amount to more than the assertion that Captain Parekh "had no plans to retire and intended to work for the rest of his life." This does not "fully develop[] the evidentiary basis for [a] departure" from the work-life expectancy average.[59]

Although under *Deperrodil* the Fifth Circuit does not mandate that Plaintiff hire a vocational rehabilitation expert in order to meet the *Madore* standard, Plaintiff must provide evidence that explains why Captain Parekh was "likely to live and work [] longer" than the statistical average. The Court finds Plaintiff has failed to create a genuine dispute of material fact with regard to Captain Parekh's likelihood of working longer than the average work-life expectancy. Defendant is entitled to a ruling that Plaintiff may only recover loss of support damages consistent with average work-life expectancy.

## II. Loss of Society

In Plaintiff's general maritime wrongful death action, Plaintiff claims damages for loss of society for herself and Captain Parekh's beneficiaries. According to Plaintiff, these beneficiaries include Captain Parekh's adult sons Siddharth and Sandeep, and his four grandchildren, Rajveer, Moksh, Tara, and Trisha.

---

[59] *Deperrodil v. Bozovic Marine, Inc.*, 842 F.3d 352, 362 (5th Cir. 2016).

The Supreme Court in *Moragne v. States Marine Line, Inc.*[60] recognized the existence of a wrongful death claim under general maritime law for a widow of a longshoreman killed while working aboard a vessel in state territorial waters.[61] The Court subsequently held in *Sea-Land Services Inc. v. Gaudet*[62] that the maritime wrongful death action allowed "the decedent's dependents [to] recover damages for their loss of support, services, and society, and funeral expenses."[63] In interpreting the scope of damages recoverable under a *Moragne* wrongful death action, the Fifth Circuit Court held in *Miles v. Melrose*[64] that a mother of a seaman who had died in territorial waters was not entitled to damages for loss of society because she was not dependent on the decedent.[65] The Supreme Court affirmed, but on the grounds that because the decedent was a Jones Act seaman, recovery for loss of society in a general maritime action would not be permitted.[66]

The Supreme Court has not addressed recovery for loss of society in general maritime actions since *Miles*, but the Fifth Circuit later held *in In re American River Transp. Co.* that non-dependent survivors of a deceased longshoreman or harborworker may not recover for loss of society.[67] Although the Fifth Circuit found the distinction between dependent and non-dependent survivors "is not explicitly required by the relevant statutes or Supreme Court precedent," recovery by non-dependent survivors would:

---

[60] 398 U.S. 375 (1970).
[61] *Id*. The Supreme Court later extended the general maritime law wrongful death action for a maritime employee killed in state waters to include an action for negligence. *Garris*, 532 U.S. at 818–19.
[62] 414 U.S. 573 (1974).
[63] *Id.* at 584.
[64] 882 F.2d 976 (5th Cir. 1989).
[65] *Id.* at 21-22.
[66] *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990).
[67] *In re American River Transp. Co.*, 490 F.3d 351 (5th Cir. 2007).

> (1) impede uniformity by going against the substantial majority of the federal court decisions on this issue, and (2) create an anomaly by expanding the class of beneficiaries of nonseamen who may recover for loss of society in the aftermath of the Supreme Court's denial [in Miles] of any such recovery to the beneficiaries of seaman.[68]

Accordingly, the Fifth Circuit concluded that "non-dependent [beneficiaries] of a longshoreman who died in territorial waters are not entitled to recover damages for loss of society."[69] "Dependency," for the purposes of general maritime wrongful death claims, carries its "ordinary meaning" of financial dependency.[70] An adult child may be dependent on his or her parent,[71] just as a parent may be dependent on a minor child.[72]

Defendant Weber seeks summary judgment that Plaintiff may seek only recovery for her loss of support on the grounds that Captain Parekh's children Siddarth and Sandeep, and his grandchildren Rajveer, Moksh, Tara, and Trisha, are not his dependents.[73] Weber puts forward the following undisputed facts. Captain Parekh has three adult children: Siddarth Parekh, 40 years old; Prerna Girdhar, 38 years old; and Sandeep Parekh, 35 years old.[74] Rajveer, Moksh, Tara, and Trisha Parekh are Captain Parekh's grandchildren.[75] Siddarth and Sandeep contribute to a joint account utilized by the entire household.[76] Captain Parekh's tax returns from 2011 to 2015 do not list any of his children or grandchildren as dependents.[77]

---

[68] *Id.* at 359 (citations omitted).
[69] *Id.* at 360. Although the facts of *In re American River Transp. Co.* involved non-dependent parents, rather than non-dependent children, other district courts in this Circuit have generalized the Fifth Circuit's holding to apply to "survivors of a deceased worker covered by the LHWCA who were not financially dependent on the deceased." Hopper v. M/V UBC Singapore, 2010 WL 2977296 at *2 (S.D. Tex. July 20, 2010).
[70] *Neal v. Barisich, Inc.*, 707 F.Supp. 862 (E.D.La. 1989).
[71] *See Solomon v. Warren*, 540 F.2d 777 (5th Cir. 1976) (affirming to an adult child for loss of support).
[72] *Complaint of Patton-Tully Transp. Co.*, 797 F.2d 206, 213 (5th Cir. 1986).
[73] R. Doc. 67-2 at 6.
[74] R. Doc. 67-3 at ¶ 4. R. Doc. 75-5 at ¶ 4. Plaintiff does not seek damages for Prerna Girdhar.
[75] R. Doc. 67-3 at ¶ 5. R. Doc. 75-5 at ¶ 6.
[76] R. Doc. 67-3 at ¶ 9. R. Doc. 75-5 at ¶ 9. Plaintiff disputes that there is evidence showing that Siddharth and Sandeep are employed full-time. R. Doc. 75-5 at ¶ 9.
[77] R. Doc. 67-3 at ¶ 8. R. Doc. 75-5 at ¶ 8.

Plaintiff disputes whether Siddarth, Sandeep, Rajveer, Moksh, Tara, and Trisha are financially dependent on Captain Parekh. According to testimony by Siddharth and Sandeep and an affidavit by the Plaintiff, the entire family lived in the same house in LaPlace, Louisiana,[78] and shared a communal bank account into which they all contributed that was used for jointly paying bills and expenses.[79] Plaintiff's affidavit states that Captain Parekh "monetarily supported everyone who lived in the house," and "was the primary source of monetary support for everyone living in the house."[80] Captain Parekh "deposited the vast majority of funds into the shared Chase Bank account."[81] Sandeep testified that he, his wife, his children, his brother, and his brother's wife and children, all lived in the house in LaPlace.[82] Sandeep and Siddharth further testified that everyone in the extended family paid into a single checking account which is used for day-to-day expenses.[83]

The Court finds Plaintiff's affidavit and the deposition testimony of Captain Parekh's sons are insufficient to create a genuine issue of material fact. The Fifth Circuit rejects the use of self-serving affidavits and testimony to defeat summary judgment.[84] Of course, it is well-established that a party's verified answers to interrogatories may serve as support or rebuttal of a motion for summary judgment,[85] and a party's own sworn affidavits can serve to create a genuine issue of material fact sufficient to defeat a motion

---

[78] *See* R. Doc. 102-2 at 8 (Deposition of Siddarth Parekh); R. Doc. 102-4 at 5 (Deposition of Sandeep Parekh); R. Doc. 102-3 at 1-2 (Affidavit of Nayana Parekh).
[79] *See* R. Doc. 102-2 at 57-58; R. Doc. 102-4 at 6; R. Doc. 102-3 at 1.
[80] R. Doc. 102-3 at 2.
[81] R. Doc. 75-3 at ¶ 13.
[82] R. Doc. 75-4 at 4.
[83] R. Doc. 75-4 at 5. R. Doc. 75-2 at 9.
[84] *See, e.g.*, *BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996); *Cenac Marine Services, LLC v. Clark*, 2017 WL 1511760 (E.D. La. Apr. 7, 2017).
[85] *See Fowler v. Southern Bell Telephone & Telegraph Co.*, 343 F.2d 150, 154 (5th Cir. 1965).

for summary judgment.[86] However, a non-moving party must come forward with more than "conclusory allegations, speculation, and unsubstantiated assertions."[87] In this case, Plaintiff's affidavit is wholly conclusory, stating only that Captain Parekh "monetarily supported everyone who lived in the house," and "was the primary source of monetary support for everyone living in the house,"[88] without providing any factual basis for support. Further, the testimony of Sandeep and Siddharth Parekh is immaterial to the issue of financial dependency. The sons simply describe the family's living arrangement, and do not testify regarding their or their children's financial dependency on Captain Parekh.

Plaintiff has not provided any evidence beyond her own self-serving affidavit and the testimony of the potential beneficiaries. While Plaintiff avers that "abundant uncontested evidence [exists] that Siddharth and his children, and Sandeep and his children, were financially dependent upon Decedent under applicable law,"[89] Plaintiff has not produced any bank statements, tax returns, pay stubs, or the like, that would establish financial dependency between Captain Parekh and his adult children and their progeny.

Plaintiff has failed to create a genuine dispute of material fact as to whether Siddharth, Sandeep, Rajveer, Moksh, Tara, and Trisha Parekh are financial dependents of Captain Parekh. Weber is entitled to a judgment that only Plaintiff Nayana Ambarish Parekh may seek damages for loss of society in her general maritime wrongful death action.

---

[86] *See, e.g., Dibidale of La., Inc. v. American Bank & Trust Co.,* 916 F.2d 300, 307-308 (5th Cir. 1990).
[87] *Douglass v. United Services Auto Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996).
[88] R. Doc. 102-3 at 2.
[89] R. Doc. 75 at 8.

**CONCLUSION**

**IT IS ORDERED** that Defendant Weber Marine, L.L.C.'s motions for partial summary judgment[90] are **GRANTED.**

**New Orleans, Louisiana, this 8th day of January, 2018.**

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**

---

[90] R. Docs. 66 and 67.